**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**                    **Case No**.: **6:08-cv-1872-ORL-31GJK**
                                          **DISPOSITIVE MOTION**

vs.

**CYBERSPY SOFTWARE, LLC and**
**TRACER R. SPENCE,**

        **Defendants.**

_____/

## DEFENDANTS CYBERSPY SOFTWARE, LLC AND TRACER R. SPENCE'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

      Defendants, CYBERSPY SOFTWARE, LLC ("CyberSpy"), and TRACER R. SPENCE ("Spence") (sometime collectively referred to as the "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move for final summary judgment of all claims brought by Plaintiff, the Federal Trade Commission ("FTC"). The pleadings and record evidence reveal that there is no material fact in dispute and Defendants are entitled to judgment as a matter of law because: 1) the FTC lacks Article III standing to bring this action since there is no evidence of any actual or imminent harm, there is not causal connection between the alleged injury and the challenged action of the Defendants and the alleged harm will not be redressed by the FTC's requested injunction; and 2) the record evidence shows that the Defendants have not engaged in any deceptive or unfair practices in violation of 15 U.S.C. §45(a) (the "FTC Act").[1]

---

[1] Defendants have filed the following affidavits/declarations in support of this Motion: Declaration of Toni-Marie Catchpaw ("Catchpaw ¶ ___"); Declaration of Steve Aspery ("Aspery ¶ ___"); Declaration of Jack Sumner, Jr. ("Sumner ¶ ___"); Declaration of S. Brannon PhD ("Brannon ¶ ___"); Declaration of Barbara Abel ("Abel ¶ ___"); Declaration of Erik Laykin ("Laykin ¶ ___"); Affidavit of Tracer Spence ("Spence ¶ ___"); and Affidavit of Michele L. Johnson, Esq. ("Johnson ¶ ___"). Further, in this Response, Defendants may refer to

## I.      Introduction

The FTC seeks to have an injunction entered against the Defendants which would: 1) enjoin Defendants from marketing and selling RemoteSpy, a software product which is not subject to any FTC regulation or in violation of any law (the "Target Product"); 2)  enjoin the Defendants from disclosing any information obtained through the operation of the Target Product; 3)  freeze all of the Defendants' assets, including but not limited to, all bank accounts, credit cards and real and personal property; and 4) enjoin the Defendants from operating any new business without notifying the FTC.  *See* FTC's Proposed Preliminary Injunction Order (Dkt. 19).  This far-reaching punitive remedy is being sought because the FTC is concerned that the Target Product has the *potential* of being abused by some unknown and unnamed third parties to cause harm to some unknown and unnamed "victims." Specifically the FTC speculates that the Target Product, a remote keylogging software product,[2] is being used by others to commit identity theft and/or stalk victims of domestic abuse (the "Alleged Harm").  However, the FTC has no evidence whatsoever that the Target Product was ever used to commit the Alleged Harm.  Further, the FTC has no evidence that either Defendant personally committed any act that caused any harm to anyone.  Spence ¶ 11. Instead, the FTC claims that the Defendants' act of marketing and selling the Target Product provides unknown third parties with the "means and instrumentalities" to cause the Alleged Harm (assuming it occurred).  Further, even if the FTC managed to locate a victim of a third party's abuse of the Target Product, the requested FTC injunction will do nothing to redress

---

some of the FTC's evidence including the Declaration of Nathaniel Good ("Good ¶ __") (Dkt. 2); Declaration of Cindy Southworth ("Southworth ¶ __") (Dkt. 2); Declaration of Sallie Schools ("Schools ¶ __") (Dkt. 2); and Declaration of David Koehler ("Koehler ¶ __") (Dkt. 4).

[2] According to the FTC's definition, remote keylogger software is a product that (a) records every keystroke a computer user types and/or records other computer activities; (b) can be sent over the Internet to a remote computer via email; and (c) can be installed without the knowledge and consent of the owner or authorized user of the computer.  *See* TRO (Dkt. 2), p. 4 ¶ 10.

the Alleged Harm the FTC seeks to prevent.  The Target Product comprises a mere 3 to 4%

of the marketplace for remote keylogger software products.  Spence ¶ 20.  As such, while the

FTC requested injunction will financially destroy the Defendants, it will do nothing to

prevent the Alleged Harm since the disappearance of the Target Product will be undoubtedly

be filled by any number of competitive remote keylogger software products ("Competitive

Remote Keylogger Products"), which the FTC has not targeted and which remain legal and

not subject to any FTC regulation.  Spence ¶ 17-21; Laykin ¶ 21.

      Accordingly, Defendants are entitled to judgment in their favor as a matter of law

because:  (1) the FTC lacks Article III standing to bring this case and (2) the undisputed

record evidence shows that the Defendants committed no act in violation of the FTC Act.

## II.     Undisputed Facts

      To avoid needless repetition, Defendants refer the Court to its Statement of Facts

(Section II) contained in Defendants Motion to Vacate or Modify Temporary Restraining

Order and Responses to Order to Show Cause Why Preliminary Injunction Should Not Be

Granted, filed simultaneously herewith and incorporated herein by this reference.

## III.     Standard for Summary Judgment

      Federal Summary Judgment Procedure pierces the pleadings to assess the proof to

determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986), and summary judgment is

authorized if the record evidence reveals no genuine issue as to any material fact.  *Cash v.

Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130,

1135, (11th Cir. 1996); *Chambers v. Walt Disney World Co.*, 132 F.Supp.2d 1356, 1363

(M.D. Fla. 2001).

A factual dispute is genuine only if the non-moving party has produced evidence such that a reasonable fact finder could return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case. *Wavde v. Digital Equip. Corp.* , 994 F. Supp. 1433, 1436 (S.D. Fla. 1997).

To defeat summary judgment, the non-moving party bears the burden of coming forward with sufficient evidence on <u>each element that must be proved</u>. *Early Champion Int'l. Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts", *Matsushita*, 475 U.S. at 586; *Chambers*, 132 F. Supp. 2d at 1363, and the existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247-48. The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient. *Id.* at 252. The specific facts with which the opposing party comes forward must be material and substantial, not fanciful, frivolous, gauzy, spurious, irrelevant, conjectural, speculative, or specious. *Chambers*, 132 F.Supp.2d at 1363. Conclusionary allegations do not suffice, *Johnson v. Fleet Fin, Inc.*, 4 F.3d. 946, 949 (11th Cir. 1993), and an inference is not reasonable if it is a guess or a possibility. *Chambers*, 132 F. Supp. 2d at 1363.

## IV.     Argument

### A.     The Federal Trade Commission Lacks Standing to Bring this Action

Article III of the Constitution limits the judicial power to the resolution of "cases" and "controversies." One element of the "bedrock" case-or-controversy requirement is that

plaintiffs must establish that they have standing to sue.  *Raines v. Byrd*, 521 U.S. 811, 818

(1997).  There are three requirements that constitute the "irreducible constitutional

minimum" of standing.  *Vermont Agency of Natural Resources v. United States ex. rel.*

*Stevens,* 529 U.S. 765, 771 (2000).  First a plaintiff must demonstrate an "injury in fact,"

which is "concrete," "distinct and palpable," and "actual or imminent."  *Whitmore v.*

*Arkansas*, 495 U.S. 149, 155 (1990) (internal quotation marks and citation omitted).  Second

a plaintiff must establish "a causal connection between the injury and the conduct

complained of - the injury has to be 'fairly trace[able] to the challenged action of the

defendant, and not…th[e] result [of] some third party not before the court.'"  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (quoting *Simon v. Eastern Ky. Welfare*

*Rights Organization*, 426 U.S. 26, 41-42 (1976)).  Third, a plaintiff must show the

"substantial likelihood that the requested relief will remedy the alleged injury in fact."  *Id.;*

*Stevens*, supra, at 771.  "This triad of injury in fact, causation and redressability constitutes

the core of Article III's case-or-controversy requirement, and the party invoking federal

jurisdiction bears the burden of establishing its existence[3]."  *Steel Co. v. Citizens for a Better*

*Environment*, 523 U.S. 83, 103-104 (1998).  As discussed below, the FTC has failed to

satisfy its burden with respect to any of these three requisites for any form of alleged injury.

### 1.  FTC's Alleged Harm is Speculative

To constitute an injury in fact, a plaintiff has the burden of establishing that the

alleged injury is, among other things, "actual or imminent, not conjectural or hypothetical."

*Friends of the Earth, Inc. v. Laidlaw Env't Sys. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000);

---

[3] Government agencies bringing actions must comply with these Article III standing requirements.  *See United States v. State of Maryland*, 488 F.Supp. 347, 361 (D. Md. 1980), *citing United States v. San Jacinto Tin Co.*, 125 U.S. 273, 286 (1888)(right of government of United States to institute suit depends upon the same general principles which would apply to a private citizen).

*Warth v. Seldin,* 422 U.S. 490, 518 (1975).  The plaintiff bears the burden of persuasion by presenting evidence, usually through declarations, establishing the injury's imminence.  *See Bennett v. Spear,* 520 U.S. 154, 167 (1997); *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230-31 (1990) (citations omitted) (reiterating that "it is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record").  The FTC has failed to do this and therefore, there is no basis to assume, let alone infer or find, that it has standing to bring this action.

In the Complaint, the FTC alleges only vague and speculative injuries to the consumer and/or public which do not qualify as a necessary "injury in fact."  *See e.g.* Complaint ¶ 27, 30, 33 and 41.  Rather than being "concrete," "palpable" or "actual and imminent," the FTC instead states that "consumers…have *likely* suffered and will *likely* continue to suffer substantial injury."  *Id.* (emphasis added).  On its face, the foregoing language is merely speculative and vague and states no real injury suffered by any real person and therefore fails to satisfy the standing requirement of an actual "injury in fact." *See City of Los Angeles v. Lyons*, 461 U.S. 1660, 1665 (1983) (plaintiff lacked standing to seek injunction to enjoin further abuse by police department even though plaintiff had previously been illegally choked by police; alleged injury or threat of injury must be both real and immediate, not conjectural or hypothetical).  Further, the declarations submitted by the FTC fail to identify a single victim that was injured by the Target Product.  The closest the FTC comes is in the declaration of Cindy Southworth[4], who claims to have "spoken" with or read newspaper accounts about victims of domestic abuse and speculates that they may have been injured by certain unnamed "spyware."  The FTC is unable to counter the sworn

---

[4] As set forth in the Defendants Motion to Strike Declaration of Cindy Southworth, which is filed simultaneously herewith and incorporated herein by reference, Ms. Southworth's "opinions" are nothing more than pure speculation dressed up as an expert opinion and lacks all foundation and support.

testimony of Defendant Spence, who testifies that he is not aware of any incidents where the

Target Product was used to commit identity theft or stalk victims of domestic abuse.  Spence

¶ 16.  Indeed, since its development in 2004, there have only been two incidents involving

the possible criminal misuse of the Target Product, neither of which related to identity theft

or domestic abuse.  Spence ¶ 15-16.  Further the declaration of Erik Laykin makes clear that,

for a variety of identified reasons, commercial monitoring software products, such as the

Target Product, are not used in the real world to commit identity theft.  Laykin ¶ 20, pp. 13-

14.  Mr. Laykin is the only expert to submit a declaration in this case that actually has

experience investigating identity theft.  Laykin ¶ 10-12.  The failure to identify a single

victim or incident involving the Target Product or the Defendants' conduct, coupled with the

failure to provide any record evidence of the likelihood for such harm to occur in the

immediate future, is fatal to FTC's standing.

Furthermore, the FTC has failed to show that the alleged injury is imminent, absent

judicial intervention, and not "conjectural or hypothetical."  *Friends of the Earth,* 528 U.S. at

180-181.  To satisfy the immediacy requirement, FTC must present evidence that the Alleged

Harm will occur relatively soon. *McConnell v. Fed. Election Comm'n,* 540 U.S. 93 (2003)

(senator lacked standing to challenge provision of the Bipartisan Campaign Reform Act

because he was not scheduled to run for reelection for another five years and therefore,

"[t]his alleged injury in fact is too remote temporally to satisfy Article III standing").  FTC

has presented no evidence that the Alleged Harm has and will occur, much less that it is

imminent.  As set forth above, because products such as the Target Product are not typically

used by perpetrators of identity theft (Laykin ¶ 20, p. 13-14), the FTC will not be able to

show that the Alleged Harm from the Target Product is likely, much less imminent. Accordingly, FTC lacks standing in this action.

### 2.      FTC's Alleged Harm is Not Caused by the Defendants

In addition, the FTC has also failed to establish the second prong of the standing requirement, a "causal connection between the injury and the conduct complained of."  The Supreme Court in *Lujan v. Defenders of Wildlife*, held that an injury has to be 'fairly trace[able] to the challenged action of the defendant, and not…the[e] result [of] some third party not before the court.'"  This requisite element is particularly fatal to FTC's claim since it is undisputed that the Defendants have not committed any of the acts constituting the Alleged Harm.  Spence ¶ 11.  Rather, any alleged injury would be caused by the misuse of the Target Product, in violation of the Defendants' License Agreement, by third parties not within the control of the Defendants and not before the Court.  Spence ¶10, 12.  Making Defendants liable for the misuse of their product, which comports with all applicable laws and regulations, by consumers and the potential injury to third parties caused thereby is a slippery slope as any seemingly innocuous product on the market could be used to harm the public.  Laykin ¶ 19.  Indeed, all sorts of products, such as telescopes and GPS devices can be misused to improperly obtain personal information about its victims.  Laykin ¶ 19.  Accordingly, it is clear that the FTC will not be able to satisfy the causation prong required for Article III standing.

### 3.      The Alleged Harm Will Not be Redressed by the FTC's Requested Injunction

Even if the FTC managed to satisfy the first two elements required for Article III standing, the undisputed evidence is overwhelming that the FTC cannot and will not be able to satisfy the third element--which requires a substantial likelihood that the requested relief

will remedy the alleged injury in fact.  The record evidence is clear that the Target Product

enjoys a minute share (approximately 3-4%) of the remote keylogging product market.

Spence ¶ 20.  Indeed, even in the compressed timeframe that the Defendants and their

counsel have had to respond to the Court's TRO (Dkt. 2), they were able to find numerous

Competitive Remote Keylogger Products that had the same functionality of the Target

Product and were advertised and promoted in a manner which was similar to the Target

Product.  *See* Spence ¶ 17-18; Johnson ¶ 7-36, Exhibits 3-19, 21-26, 28-31, 32-57.  As

detailed in the affidavit of Defendants' counsel, Michele Johnson, these Competitive Remote

Keylogger Products remain available for sale on the internet.  Johnson ¶ 37.  The websites

promoting these Competitive Remote Keylogger Products use language and methods similar

to that employed by the Defendant CyberSpy in its promotion of the Target Product.

Johnson ¶ 7-36, Exhibits 3-19, 21-26, 28-31, 32-57.  Obviously, these Competitive Remote

Keylogger Products will fill the small void left open by the disappearance of the Target

Product.  Accordingly, even if the FTC's requested injunction is entered, the "public" will

remain exposed to alleged dangers associated with remote keylogging products.

Accordingly, the FTC has presented no evidence to show that enjoining the Defendants

would redress the alleged injury.[5]  Enjoining the continued existence of the Target Product

will financially devastate the Defendants while failing to redress the speculative nature of the

injury alleged.  It is in this vein that selectively enjoining the present Defendants yet leaving

many potential spyware defendants in the market will fail to attain the FTC's stated goal.

---

[5] Indeed given the large number of products available, the only way for the FTC to prevent the alleged harm described in the Complaint is for it to regulate such products through its rule-making authority, something that it choose not to do.

**B.     The FTC Has Not and Cannot Prove That the Defendants Engaged in Unfair or Deceptive Acts**

In its Complaint the FTC has singled out the Defendants and seeks to permanently enjoin the continued sale, distribution and functionality of the Target Product, by alleging that the Defendants have "marketed and sold Remote Spy," "a product which causes injury to the public" in violation of the FTC Act.  Complaint ¶¶ 28-41.  In addition, the FTC has alleged that the Defendants have provided the "means and instrumentalities for the commission of unfair acts and practices" by unidentified third parties.  Complaint ¶ 35-40. In essence, the FTC surmises that unknown third parties will purchase the Target Product and, using the information available on the Target Product's website (which the FTC acknowledges is accurate), will remotely deploy the product on an unsuspecting "victim's" computer and commit a host of unspecified criminal acts.  As such, the FTC takes the unusual position that the Defendants act of placing the Target Product on the market and accurately describing its functionality constitutes an unfair and deceptive act in violation of the FTC Act.

**1.  There is No Evidence that the Defendants' Committed a Deceptive Act**

In order to grant relief under the FTC Act, an individual or entity must have committed, "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. 45(a)(2).  To establish that an act or practice is deceptive, the FTC must show *probable*, not *possible* deception.  *Millennium Comm. & Fulfillment, Inc. v. Office of the Attorney General*, 761 So.2d 1256, 1263 (Fla. 3rd DCA 2000).  "Deception occurs when there is a representation, omission or practice that is *likely* to mislead the consumer acting *reasonably* in the circumstances, to the consumer's *detriment*".  *Southwest Sunsites, Inc. v. Federal*

*Trade Comm'n,* 785 F.2d 1431, 1435 (9th Cir. 1986) (emphasis in original); *FTC v. Tashman,*
318 F.3d 1273, 1277 (11th Cir. 2003). *See also, FTC v. Wilcox*, 926 F. Supp. 1091, 1098
(S.D. Fla. 1995*); FTC v. Atlantex Assocs*., 1987 WL 20384 (S.D. Fla. 1987). The FTC does
not and cannot prove these elements.

First, the FTC does not allege that the Defendants have made misrepresentations or
material omissions in its marketing and advertising of the Target Product. To the contrary,
FTC's expert, Nathaniel Good,  tested the Target Product and concluded that it "performs all
of the functions advertised on its website…" and "teaches their customers effective
techniques" to remotely deploy the product. Good (Dkt. 2), p. 35--Conclusions (a) and (b);
Laykin ¶ 21, p. 15. As such, through its own expert the FTC admits that the Defendants have
not made any misrepresentations or omissions and/or misled or deceived the consumers of
the Target Product. Rather, according to the FTC's "theory" the *consumers* of the Target
Product (as opposed to the Defendants) are using the Target Product to deceive others. In
other words, the alleged *consumers* are the *perpetrators* of the deceptive act, not the victims.
Furthermore, the FTC's "theory" requires that the consumers use the Target Product in a
manner which is inconsistent with the Defendants' License Agreement and in violation of
criminal law. Spence ¶ 10, Schools, attachment 5. As such, FTC cannot prove the essential
elements of its claim--that the Defendants committed a deceptive act which is *likely to
mislead consumers **acting reasonably** in the circumstances,* to the *consumer's detriment.
See, Southwest Sunsites,* 785 F.2d at 1435. (emphasis added). Obviously a consumer will not
be deemed to be "acting reasonably" if he/she uses a product in a manner which is
inconsistent with the terms of the License Agreement and in violation of any number of
criminal laws.

## 2.  The FTC's Flawed "Means and Instrumentalities" Theory

Anticipating the weakness of their case, the FTC alleges that the Defendants are liable under the FTC Act because they provided the "means and instrumentalities" to others to engage in the deceptive acts.  The FTC then misconstrues case law and argues that the Defendants can be liable under this newly created "means and instrumentalities" theory for the deceptive acts of others over whom they have no control and no knowledge of the abusive activity.  *See* Spence ¶ 10, 11, 16, FTC Memorandum In Support of FTC's Motion for Temporary Restraining Order and Order to Show Cause ("FTC Memo") (Dkt. 3), p. 17-20.  However, case law is clear that where the FTC is unable to demonstrate that a particular defendant participated directly in the wrongful practices or acts, then it must prove that the non-actor defendant had authority to control the actions of the individuals committing the deceptive act **and** knowledge of the wrongful acts or practices.  *Federal Trade Comm'n v. Jordan Ashley, Inc.,* 1994 WL 200775 *3 (S.D. Fla. 1994).

In support of its position, the FTC cites a variety of clearly distinguishable cases.  FTC Memo (Dkt. 3) at p. 17-18.  Each of the cases cited by the FTC involved circumstances in which the defendants sought to be enjoined had express knowledge of the deceptive action and/or control over the entities committing the deceptive acts.  In *Waltham Watch Co. v. FTC,* 318 F.2d 28, 30 (7th Cir. 1963), the defendant/licensor  was liable for *knowingly* permitting the licensee of the "Waltham Watch" trademark to disseminate false and misleading promotional materials -- which the defendant/licensor had *expressly approved* and received numerous complaints about.  The *Waltham Watch* case is clearly distinguishable since here, the undisputed evidence is that the Defendants have no knowledge

or control of the unidentified third parties who are supposedly using the Target Product to commit acts resulting in the Alleged Harm.  Spence ¶ 10, 11, 16.

Next the FTC cites to the cases of *Gellman v. FTC*, 290 F.2d 666 (8th Cir. 1961) and *Globe Cardboard Novelty Co. v. FTC,* 192 F.2d 444 (3rd Cir. 1951).  Both *Gellman* and *Globe* involved the sale by the defendants of "punchboard" game cards to sell merchandise to various dealers in interstate commerce.  In *Gellman* and *Globe,* the Courts recognized that it was "now well established" that the use of punchboards to sell merchandise by means of a game of chance was considered "unfair or deceptive" under the FTC Act.  *Gellman,* 290 F.2d. at 667; *Globe,* 192 F.2d at 446.  Further, the *Gellman* and *Globe* Courts rejected the defendants' professed lack of knowledge that the punchboard cards would be used for selling merchandise since such claims were inconsistent with the defendants' promotional materials and because the "sole function" of the punchboard cards was to sell merchandise -- that is to say, there was *no legitimate beneficial use* to the punchboard cards.  *Globe,* 192 F.2d at 447; *Gellman,* 290 F.2d *at* 669-670.  Unlike the *Gellman* and *Globe* cases, the Target Product is a legal product that is not subject to any FTC rules or regulations, and has many legitimate beneficial uses.  Spence ¶ 7-9, Laykin ¶ 18; Sumner ¶ 5-9; Catchpaw ¶ 3-5; Brannon ¶ 2-4; Abel ¶ 7-8; and Aspery ¶ 3-6.  Further, there is no evidence (unlike in *Gellman* and *Globe*) that the Defendants sold the Target Product knowing it would be used in a deceptive manner. Spence ¶ 10, 16.

Finally, the remaining cases cited by the FTC can likewise be easily distinguished since they all involve deceptive conduct committed by the defendants and/or their agents. *See C. Howard Hunt Pen Co. v. FTC,* 197 F.2d 273 (3rd Cir. 1952) (defendants held liable for falsely representing to consuming public that pens were plated with 14 Kt. Gold when in fact

they were only coated with an alloy of gold); *FTC v. Five-Star Auto Club, Inc.,* 97 F.Supp.2d 502, 527 (S.D.N.Y. 2000) (defendants found liable for misleading statements about their automobile leasing programs which were made by themselves and by "agents" who had actual or apparent authority to make such representations); *FTC v. Magui Publishers, Inc.,* 1991 WL 65547 (C.D. Cal. 1991) (enjoining the defendants and "their officers, agents, servants, employees, attorney, and all persons or entities in active concert or participation with them" from misleading the public about the true artist of prints sold). Again, in all of these cases, the defendants were actively engaged in the alleged deceptive conduct and/or had knowledge that such acts were being committed by persons within their authority or control. The FTC has not provided the Court with any authority to support its theory that a defendant can be held liable for unknown deceptive acts committed by third parties not within the defendant's authority or control. As such, the FTC's flawed "means and instrumentalities" theory is without legal support and must be rejected.

V.      **Conclusion**

        Based on the foregoing, Defendants respectfully request that this Court grants this Motion for Summary Judgment and entry final judgment in their favor on all claims brought by the FTC.

        Dated this 19th day of November 2008.

                                        Respectfully submitted,

                                        s/Dawn Giebler Millner
                                        Dawn I. Giebler-Millner, Esq.
                                        Florida Bar No. 856576
                                        Michele L. Johnson, Esq.
                                        Florida Bar No. 13570
                                        Mary Ellen Pullum, Esq.
                                        Florida Bar No. 24673
                                        GREENBERG TRAURIG, P.A.
                                        450 S. Orange Avenue, Suite 650

Orlando, FL 32801
Telephone No. (407) 420-1000
Facsimile No. (407) 841-1295
gieblerd@gtlaw.com

*Attorneys for Defendants CyberSpy*
*Software, LLC and Tracer R. Spence*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **November 19, 2008** I electronically filed the foregoing with the Clerk of the Court for filing and uploading to the CM/ECF system, which will send a notice of electronic filing to the following: **David K. Koehler, Esq.**, dkoehler@ftc.gov, and **Tracy R. Shapiro, Esq.**, tshapiro@ftc.gov.

s/Dawn Giebler Millner
Dawn I. Giebler-Millner, Esq.
Florida Bar No. 856576