UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

               Plaintiff,

               v.

CYBERSPY SOFTWARE, LLC, and
TRACER R. SPENCE,

               Defendants.

Case No. 6:08-cv-1872-ORL-31GJK

**PLAINTIFF FTC'S OPPOSITION TO DEFENDANTS' MOTION TO
STRIKE THE DECLARATION OF CINDY SOUTHWORTH, MSW**

The Federal Trade Commission ("FTC" or "Commission") opposes Defendants'

motion (Docket No. 29) to strike the FTC's expert witness Cindy Southworth.  The FTC

has alleged that Defendants' advertising and sale of their "RemoteSpy" keylogger

spyware, and the subsequent collection and publication of consumers' personal

information to unauthorized third parties, is an unfair practice that violates Section 5 of

the FTC Act, 15 U.S.C. § 45(a).  An unfair act or practice is one that "causes *or is likely*

*to cause* [1] substantial injury to consumers which is [2] not reasonably avoidable by

consumers themselves and [3] not outweighed by countervailing benefits to consumers or

to competition." 15 U.S.C. § 45(n) (emphasis added).  Evidence of the range of harms

likely to be caused by a practice is directly relevant to proving the law violation, and the

Declaration of Cindy Southworth, MSW – the leading expert on the intersection of

technology and domestic violence – provides reliable, credible, probative evidence on

that issue. Ms. Southworth is eminently qualified as an expert witness and her declaration provides well-supported opinions that will assist the Court in determining facts at issue in this case. Contrary to Defendants' protestations, this evidence poses no danger of unfair prejudice to them. Defendants' motion to strike should be denied.

## I.    LEGAL STANDARD

Federal Rule of Evidence 702, applied in accordance with the factors set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), governs the admissibility of expert testimony. In making a determination of admissibility, a trial court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters [she] intends to address; (2) the methodology by which the expert reaches [her] conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004), *cert. denied,* 544 U.S. 1063 (2005). In evaluating reliability, trial courts have broad discretion in whether and how to apply the *Daubert* factors. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147, 152-53 (1999); *U.S. v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005). Depending on the issue, the field of expertise, and the subject of the testimony, the factors may or may not be appropriate. *Kumho*, 526 U.S. at 141-42; *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005), *cert. denied*, 547 U.S. 1023 (2006) (noting that *Daubert* factors should not be "rigidly applied" but should serve as "guidelines," noting the Supreme Court's emphasis that Rule 702 inquiry is "a flexible one"). The applicability of the

various factors is highly dependent on the facts of each particular case, and in some cases testimony that does not meet all or most of the *Daubert* factors may nonetheless be admissible.  *Brown*, 415 F.3d at 1268 (citing *Kumho*, 526 U.S. at 150).

## II.   MS. SOUTHWORTH IS QUALIFIED UNDER RULE 702 AND HAS PREVIOUSLY BEEN QUALIFIED AS AN EXPERT IN FEDERAL COURT

Tellingly, defendants do not seriously dispute Ms. Southworth's qualifications as an expert, nor could they.  Ms. Southworth is an internationally recognized expert on the use of technology, including spyware and other monitoring software, to locate, harass, and harm victims of domestic violence.  Her impressive array of credentials is set forth clearly in her declaration, dated November 4, 2008 (hereafter "Southworth Decl.").  *See* Southworth Decl. at ¶¶ 1-27.  She worked for years with victims of domestic violence, sexual assault, and stalking.  *See id.* at ¶¶ 3-6.  Ten years ago she began to specialize in technology projects aimed at ending violence against women, *id.* at ¶ 7, and she ultimately developed, and frequently presents, "a national training curriculum on the use of technology by stalkers, victims, and the community." *Id.* at ¶¶ 9, 14 (noting she has presented more than 326 trainings based on the curriculum).  She is an author of several relevant publications and has provided keynote and plenary addresses on spyware and victims.  *Id.* at ¶¶ 13, 15.[1]  She serves on national task forces addressing technology, privacy, and victim safety, and is frequently asked to provide briefings and testimony to public agencies and departments, as well as Congress.  *Id.* at ¶¶ 16, 18-19.  Through the

---

[1]  In addition to her own publications, she has "reviewed the entire body of published knowledge about the intersection of technology and domestic violence."  *Id.* at ¶ 13.

training sessions she regularly conducts, she maintains contact with victims of domestic

violence, victim advocates, technologists, and others throughout the country.  *Id.* at ¶ 14.

Her declaration offers the trier of fact a glimpse into a little known world – that of

domestic abuse victims and their stalkers.  For these reasons, Ms. Southworth is

eminently qualified to offer the Court specialized knowledge about the potential for

serious harm to victims of stalking and abuse caused by Defendants' practices.

Ms. Southworth's obvious expertise is confirmed by the fact that she has

previously been qualified as an expert in federal court in another case involving

allegations of unfair practices under the FTC Act, *FTC v. AccuSearch*, Civ. No. 06-CV-

105-D (D. Wyo.).  In the *AccuSearch* case, Ms. Southworth prepared an expert report

discussing the potential harm to domestic violence victims by the defendants' practice of

obtaining and selling confidential consumer phone records to unauthorized third parties,

including abusers and stalkers.  The defendants moved to strike her report, but the Court

soundly rejected their argument, finding that Ms. Southworth was "experienced and well

qualified" to testify.  *See* Order Denying Defendants' Motion to Strike Plaintiff's Expert

Witnesses and Exclude Expert Witness Testimony, at 4-5 (Feb. 7, 2007) (attached hereto

as **Exhibit A**).[2]  In explaining its ruling, the Court listed reasons virtually identical to

those set forth above.  *See id.* (noting development and presentation of national training

curriculum on use of technology by stalkers, victims, and the community; authoring of

---

[2] The Court went on to find that Ms. Southworth would "provide the trier of fact an insight into the domestic abuse problems" associated with the alleged unfair practice at issue in that case (the unauthorized sale of confidential consumer phone records).  Exh. A at 5-6.

relevant publications; service as consultant; testimony before Congress).  Ms.

Southworth is plainly qualified as expert.

### III.     MS. SOUTHWORTH'S OPINIONS ARE WELL-SUPPORTED AND BASED ON HER EXTENSIVE KNOWLEDGE AND EXPERIENCE

Unable to assail Ms. Southworth's expertise, Defendants instead contend that her

opinions are "generalized" and "speculative" and therefore, presumably, not sufficiently

reliable.  In fact, however, her opinions are reasonably and reliably based on her

extensive experience in working with domestic violence victims, abusers, advocates, law

enforcement, technology experts, and others.  Her field may not resemble those more

typically associated with expert witnesses – such as medicine, accounting, finger-

printing, etc. – and the underlying factual knowledge may not be verifiable in text books,

but her opinions are firmly grounded in her well-recognized knowledge and experience.

Ms. Southworth's extensive, first-hand knowledge is abundantly clear from her

declaration, including many excerpts cited by Defendants.  Ms. Southworth states that

her opinions about the ways spyware is and can be misused are "[b]ased on hundreds of

conversations with victims of domestic violence."  Southworth Decl. ¶ 39; *see also id.* at

¶ 51 ("victims have begun telling [her] that spyware has been used" to obtain personal

information about them from their computers).  She explains with great specificity the

types of personal information that abusers can obtain using spyware – information such

as webs searches, instant message conversations with friends, emails to potential

landlords, updated resume files, and other files – and how they can use that information

to track their victims.  *Id.* at ¶¶ 31, 41.  She also provides a number of instances in which

- 5 -

stalkers and abusers used spyware – including remotely installed spyware – for nefarious purposes. *See, e.g., id.* at ¶¶ 39, 42-43, 46. In one instance, Ms. Southworth herself was identified and contacted by a stalker who had remotely installed spyware on the victim's computer; she had been communicating with the victim. *Id.* at ¶ 52.

As expressly contemplated by Rule 702, Ms. Southworth applies her extensive expert knowledge to the facts of this case – namely, to Defendants' RemoteSpy product – and opines that this product – which can be secretly and remotely installed and which tracks all computer activities – poses harm to victims of domestic violence and stalking. *Id.* at ¶ 32. These harms include physical injury, financial harm, identity theft, as well as harm to third parties. *Id.* at ¶ 61. Defendants complain that Ms. Southworth does not have expertise about RemoteSpy specifically, and thus her opinions are mere conjecture. Yet nowhere in the Federal Rules is it required that an expert have direct experience with a particular product before they can offer expert testimony. Rather, Rule 702 requires that a properly qualified expert, like Ms. Southworth, reliably apply her expertise "to the facts of the case." Fed. R. Evid. 702. This she has done. As documented in her declaration, she purchased, installed, and tested the software to personally observe its capabilities. *See* Southworth Decl. at ¶¶ 33- 37. She then considered those capabilities in the context of her expertise about how domestic violence perpetrators and stalkers use information obtained through spyware, and formulated her ultimate opinions about the harm that could result from RemoteSpy. Grounded in her expertise and personal

observations of the product, her opinions are hardly conjecture.[3]

For similar reasons, Defendants' complaint that Ms. Southworth has not identified a particular instance in which the RemoteSpy software has actually caused harm to anyone is misplaced.  *See* Defendants' Motion at 5.  There is simply no requirement that Ms. Southworth's declaration contain conclusive proof of injury caused by Defendants' product.  Indeed, a Section 5 unfairness claim calls for the Court to look beyond harm to one person and examine harm that befalls, or is likely to befall, whole classes of consumers because of a practice.  Here, Ms. Southworth tells us that Defendants' practices may cause numerous types of harm to victims of domestic violence.  This evidence goes directly to the FTC's burden.  *See* 15 U.S.C. § 45(n) (unfair practice is one that "causes or is likely to cause" substantial injury not reasonably avoidable and not outweighed by countervailing benefits).

Given Ms. Southworth's years of experience and breadth of expertise in this area, Defendants' contention that her conclusions regarding the likelihood of harm to domestic violence victims posed by Defendants' product are "purely speculative" strains credulity. Ms. Southworth has spent years studying, teaching, writing, and testifying about the use and misuse of technology by abusers and stalkers; she is probably more qualified than

---

[3] Moreover, the evidence Ms. Southworth cites and relies upon in her declaration is the type of evidence an expert in her field would reasonably rely upon, and her declaration therefore comports with Federal Rule of Evidence 703.  Indeed, it is hard to imagine what other evidence an expert on the intersection of technology and domestic violence would rely upon in this case other than the evidence Ms. Southworth relied upon – her knowledge of the means employed by perpetrators of domestic violence, the harms that can result, and the capabilities of the RemoteSpy software.

anyone to opine on the likelihood that RemoteSpy can be and will be misused by perpetrators of domestic violence against their victims.

### III.     MS. SOUTHWORTH'S DECLARATION POSES NO RISK OF UNFAIR PREJUDICE TO DEFENDANTS

Defendants last argue that Ms. Southworth's declaration should be excluded on the grounds that its probative value is outweighed by the danger of unfair prejudice to them. *See* Fed. R. Evid. 403. This argument is unpersuasive. For the reasons set forth above, Ms. Southworth's declaration provides well-supported expert testimony about the harm that can be caused and is likely to be caused to domestic violence victims by Defendants' RemoteSpy product. The only prejudice the Defendants face is having to confront that evidence.

Defendants complain that Ms. Southworth's opinions rely in part on accounts of conversations with unnamed victims which Defendants are unable to verify. It is true that in some instances Ms. Southworth stops short of providing identifying information about victims. However, this is for the obvious and defensible reason that her first priority is to avoid doing anything to aid their stalkers. Coming from such a renowned expert, Ms. Southworth's testimony is highly credible and its probative value outweighs any danger of prejudice to Defendants.

In any event, this Court is well equipped to take Defendants' concerns into account as it weighs the evidence in determining whether a preliminary injunction is warranted here. This is not a jury trial where concerns of prejudice are more resonant.

Case 6:08-cv-01872-GAP-GJK   Document 32   Filed 11/24/08   Page 9 of 17

## IV.    CONCLUSION

Ms. Southworth's declaration offers the Court well-supported evidence of how the advertising and sale of remote keylogger software, and the subsequent collection and publication of consumers' personal information to unauthorized third parties, causes and *is likely to cause* consumer injury.  Her testimony provides specialized knowledge that is reliable, relevant, and helpful to the Court, and it does not pose a danger of prejudice to Defendants.  Defendants' motion to strike should be denied.


Dated:  November 24, 2008          Respectfully submitted,
                                       WILLIAM BLUMENTHAL
                                       General Counsel

                                       s/David K. Koehler
                                       DAVID K. KOEHLER
                                       NY Bar. No. 2651404
                                       TRACY R. SHAPIRO
                                       CA Bar No. 220811
                                       FEDERAL TRADE COMMISSION
                                       600 Pennsylvania Avenue, N.W.
                                       Mail Drop  NJ-3212
                                       Washington, D.C.  20580
                                       TEL.: (202) 326-3627 (Koehler)
                                              (202) 326-2343 (Shapiro)
                                       FAX: (202) 326-3259
                                       Email: dkoehler@ftc.gov
                                              tshapiro@ftc.gov
                                       Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on **November 24, 2008**, I electronically filed  the foregoing **PLAINTIFF FTC'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATION OF CINDY SOUTHWORTH, MSW** with the Clerk of the Court by using the CM/ECF system, which would then send notice of the electronic filing to Dawn I. Giebler-Millner, Esq., gieblerd@gtlaw.com, Michele L. Johnson, Esq., johnsonm@gtlaw.com, and Mary Ellen Pullum, Esq., pullumm@gtlaw.com.


s/David K. Koehler
DAVID K. KOEHLER

**EXHIBIT A**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 0 5 2007

Stephan Harris, Clerk
Cheyenne

# United States District Court
## For The District of Wyoming

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil No. 06-CV-105-D |
| ACCUSEARCH, INC. d/b/a Abikka.com, | ) | |
| and JAY PATEL, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESSES AND EXCLUDE EXPERT WITNESS TESTIMONY

The above-entitled matter, having come before the Court on defendants' Motion to Strike Plaintiff's Expert Witnesses and Exclude Expert Witness Testimony, and the Court having carefully considered the motion, and response thereto, and being fully advised in the premises, FINDS:

1.    The case originally comes before the Court on plaintiff's action pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). Plaintiff seeks injunctive and other relief regarding defendants' alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Specifically, plaintiff alleges defendants have engaged in the practice of obtaining and providing, for a fee, details of incoming and outgoing telephone calls from any phone number in the world. Plaintiff claims defendants lack the necessary authorization to retrieve such information, and have gained access to the information by engaging in fraudulent and illegal actions. Plaintiff claims defendants' unauthorized acquisition and sale of confidential consumer phone records is an unfair practice in

1

violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45.  Plaintiff is seeking to permanently enjoin defendants from violating the FTC Act, as well as seeking other equitable relief including recision of contracts, restitution, and disgorgement of ill-gotten gains.

2.     In the instant motion, defendants request that the Court strike plaintiff's expert witness designations of Evan Hendricks and Cynthia Southworth.  Defendants argue "Mr. Hendricks' proposed expert testimony should be excluded and his expert witness designation stricken because his proposed testimony does not require specialized knowledge, will not assist the trier of fact, evades the province of the fact-finder, is not based upon facts in the record, is not a product of reliable principles and methods, and because he is not qualified as an expert with relation to telephone records." (Defendants' Motion to Strike Plaintiff's Expert Witnesses and Exclude Expert Witness Testimony p. 4).  Defendants argue Mr. Hendricks proposed testimony and opinions do not require and are not based on specialized knowledge and will not assist the trier of fact. Rather, defendants argue the trier of fact can employ common sense and their own experiences to determine how the average consumer may or may not be affected by dissemination of their phone records.  Similarly, defendants argue "Ms. Southworth's proposed testimony should be excluded and her expert witness designation stricken because her proposed testimony is not of specialized knowledge, will not assist the trier of fact, evades the province of the jury, and is not based upon facts in the record." (Defendants' Motion to Strike Plaintiff's Expert Witnesses and Exclude Expert Witness Testimony p. 8).

2

3. Plaintiff opposes defendants' Motion to Strike Expert Witnesses, and requests that said motion be denied. Plaintiff states that for over twenty-five years Mr. Hendricks has investigated, studied, written article and books, spoken in seminars, and testified before Congress and the courts as an expert on personal privacy and how its loss harms individuals. Plaintiff claims Mr. Hendricks knowledge is specialized in that it enables the trier of fact to understand the evidence by discussing and disclosing facts not necessarily obvious to the average consumer, and that his testimony will help the Court evaluate the harm or potential harm caused by the sale of confidential consumer phone records. Plaintiff also argues its witnesses should not be limited to defendants victims, as Section 5 unfairness claims call for the Court to look beyond past harm to one person and examine the harms that befall or are likely to befall on an entire class of consumers because of a practice. As to Ms. Southworth, plaintiff argues she is a nationally recognized expert on the use of technology, including telephone records, to locate, harass, and harm victims of domestic violence. Plaintiff claims Ms. Southworth has developed and presented training curriculum, has authored several relevant publications, worked as a consultant on relevant projects, and has been called to testify before Congress. Plaintiff argues Ms. Southworth's expertise offers the trier of fact a glimpse into the little known world of domestic abuse and technology, and goes beyond what an average consumer might reasonably be expected to know about the potential harm caused by the sale of confidential phone records.

4. The Court begins by noting with respect to the instant motion plaintiff's expert opinions are subject to the same standards of reliability that govern the expert opinions of strictly

3

scientific experts retained for the purposes of litigation. *See, Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)(holding that *Daubert* applies even when an expert's opinion relies on skill or experience-based observation). Under Federal Rules of Evidence Rule 702 and *Daubert*, the Court is to ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable. Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical or other *specialized* knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. (*emphasis supplied*)

Rule 702 imposes upon courts the obligation to act as gatekeepers, by ensuring all expert testimony whether scientific, technical, or any other specialized knowledge, is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Courts engage in a two part analysis in determining the admissibility of an expert opinion. First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, the court must determine whether the expert's opinions are sufficiently reliable. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001): FED. R. EVID. 702 ; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

5. The Court finds both Mr. Hendricks and Ms. Southworth are qualified to testify as experts as to the harms caused or likely to be caused by the selling of a consumer's personal phone

4

records, any countervailing benefits, and the appropriate steps to avoid or mitigate potential harm. Mr. Hendricks is the publisher of *Privacy Times*, has investigated, studied, written articles and books, spoken in seminars, and testified before Congress and the courts as an expert on personal privacy. Ms. Southworth is a nationally recognized expert on the use of technology, including phone records, to locate, harass, and harm victims of domestic violence. Ms. Southworth has developed and presented, on numerous occasions, a national training curriculum on the use of technology by stalkers, victims and the community, she has authored several relevant publications, acted as a consultant, and been called to testify before Congress. Mr. Hendricks and Ms. Southworth are both experienced and well qualified to testify as expert witnesses in the current litigation.

6.      In addition, Rule 702 requires that the evidence or testimony presented "assist the trier of fact to understand the evidence or to determine a fact in issue,." FED. R. EVID. 702. Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). Mr. Hendricks' and Ms. Southworth's education and experience may be beneficial to the trier of fact as a typical consumer may not posses the knowledge or background necessary to determine the potential for harm caused by the sale of confidential phone records. Mr. Hendricks has reviewed interrogatory responses and documents directly related to defendants' practices, including invoices and numerous emails between defendants and their vendors. Then, utilizing his expertise, Mr. Hendricks rendered his opinions on the harms caused by the selling of confidential consumer phone records without the consumer's knowledge or consent. Additionally, Ms. Southworth will provide the trier of fact an

5

insight into the domestic abuse problems associated with the sell of confidential phone records,
reaching far beyond what the average consumer might be expected to know.  As a result, the Court
is of the opinion that Mr. Hendricks' and Ms. Southworth's testimony may be helpful to the trier of
fact.  Therefore, the Court will not strike either Mr. Hendricks or Ms. Southworth as expert witnesses
in this case.


NOW, THEREFORE, IT IS ORDERED that defendants' Motion to Strike Plaintiff's Expert
Witnesses and Exclude Expert Witness Testimony be, and the same hereby is, DENIED.

Dated this 7th day of February, 2007.

William C. Beaman, United States Magistrate Judge

6