**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| |
|---|
| FEDERAL TRADE COMMISSION, |
| Plaintiff, |
| v. |
| CYBERSPY SOFTWARE, LLC, and TRACER R. SPENCE, |
| Defendants. |

Case No. 6:08-cv-1872-ORL-31GJK

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

In its preliminary injunction in this matter, this Court found:

[T]here is a substantial likelihood that the Commission will ultimately succeed in establishing that Defendants have engaged in and are likely to continue to engage in acts and practices and provide the means and instrumentalities to engage in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

Preliminary Injunctive Order ("Order") at ¶ 7 (Nov. 25, 2008) (Docket No. 36).

By issuing the above injunction, this Court apparently rejected Defendants outlandish

contention that the FTC lacks standing to enforce the FTC Act. Defendants base their

motion for summary judgment[1] largely on this same meritless affirmative defense.[2]  The standing analysis advanced by Defendants is inapplicable to the FTC in enforcing the FTC Act.  Even if it were applicable, the FTC has demonstrated injury in fact, that is traceable to Defendants' conduct, and that can be redressed by this Court.  Accordingly, this Court should deny Defendants' summary judgment motion as a matter of law.  Alternatively, because an accelerated discovery period has only recently commenced, summary judgment is premature as the FTC is entitled to pursue discovery regarding the factual assertions in its Complaint and the defenses raised by Defendants.

## II.     THE FTC HAS STANDING TO BRING CLAIMS AGAINST DEFENDANTS FOR VIOLATIONS OF THE FTC ACT

### A.     The FTC Has Standing to Enforce the FTC Act

As previously set forth in Plaintiff's Memorandum in Opposition to Defendants' Motion to Vacate (Docket No. 33), at 2-3, and incorporated by reference herein,

---

[1] Defendant CyberSpy Software, LLC and Tracer R. Spence's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Nov. 19. 2008) (Docket No. 24) (hereafter "SJM").

[2] Defendants also contend on this motion that the FTC cannot prove Defendants engaged in violations of the FTC Act.  Defendants unsuccessfully raised both lack of standing and no violation of the FTC Act in opposition the preliminary injunction in this matter.  *See* Motion to Vacate or Modify Temporary Restraining Order and Response to Order to Show Cause Why a Preliminary Injunction Should Not Be Granted (Docket No. 23) at 13-14; *see also* Preliminary Injunction Hearing Transcript (Docket No. 41) at 28-33.  Accordingly, the FTC herein incorporates by reference Plaintiff's Memorandum in Opposition to Defendants Motion to Vacate (Docket No. 33) and the materials cited therein.

The FTC also has moved for an order striking Defendants' second affirmative defense regarding Article III standing.  The legal arguments raised herein apply equally to further support Plaintiff's Motion to Strike Defendants' Second Affirmative Defense (Docket No. 40) that is currently pending before the Court.

Defendants' argument that the FTC lacks standing to bring this action fails as a matter of law. Section 13(b) of the FTC Act authorizes the Commission, through its own attorneys, to initiate federal district court proceedings to enjoin violations of the FTC Act and to secure such other equitable relief, including restitution and disgorgement of ill-gotten gains, as may be appropriate in each case. 15 U.S.C. § 53(b); *see also FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984). Thus, Congress has conferred standing on the Commission to bring enforcement actions under the FTC Act. *See SEC v. Rogers*, No. 07-10885, 2008 U.S. App. LEXIS 13259 at *3 (5th Cir. 2008) ("Congress may confer standing on federal agencies to bring enforcement actions under its statutes."). To have standing to state a claim, a government agency must show that it has an interest in the relief sought sufficient to entitle it to move in the matter. *United States v. Mattson*, 600 F.2d 1295, 1300 (9th Cir. 1979). Express statutory authority establishes such an interest. *In re South Park Land & Livestock Co., Inc.*, 6 B.R. 479, 481 (Bankr. C.D. Cal. 1980). The FTC has been empowered by Congress to vindicate the public interest in halting deceptive and unfair acts or practices. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992) ("Vindicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive.").

The cases that Defendants cite in support of their argument that "[g]overnment agencies bringing actions must comply with [the] Article III standing requirements" that apply to private litigants (SJM at 5 n.3) are inapposite. They merely illustrate the

principle that when the United States (or, one of its agencies) brings a suit in federal court *without express statutory approval*, it must establish that it has an interest in the case. *See United States v. Maryland*, 488 F. Supp. 347, 360-64 (D. Md.) (United States held to have standing to bring action not expressly authorized by statute), *aff'd*, 636 F.2d 73 (4th Cir. 1980) (per curiam); *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 278-79, 284-86 (1888) (discussing showing required for United States to bring action not expressly authorized by statute). In other words, the United States must "meet the usual Article III case or controversy requirements and *assert actual government interests*, rather than act as a puppet for private parties." *Federal Home Loan Bank Bd. v. Empie*, 778 F.2d 1447, 1450 (10th Cir. 1985) (emphasis added) (citing *San Jacinto Tin*). *Accord*, *United States v. State Tax Comm'n of Miss.*, 505 F.2d 633, 637-38 (5th Cir. 1974) (United States can not lend its name to a suit for the benefit of private litigants, citing *San Jacinto Tin*).[3]

By contrast, Congress has granted express statutory authority for the Commission to seek an injunction in federal district court against parties whom it has reason to believe are violating, or are "about to violate" any provision of law enforced by Commission when to do so would "be in the interest of the public." 15 U.S.C. § 53(b). In Section 5 of the FTC Act, Congress declared unfair and deceptive acts or practices in or affecting commerce to be unlawful (15 U.S.C. § 45(a)(1)), and empowered and directed the

---

[3] Even without express statutory authority, the United States can bring an action for the benefit of the general public. *See, e.g.*, *United States v. American Bell Tel. Co.*, 128 U.S. 315, 367-68 (1888) (allowed suit to protect public from fraudulent patents, citing *San Jacinto Tin*).

Commission to prevent them (15 U.S.C. § 45(a)(2)).  Congress expressly recognized that "unfair" acts and practices include those that cause and those that are "likely to cause" substantial injury.  15 U.S.C. § 45(n).  In this case, the Commission clearly has an "interest" in enforcing the statute.  The controversy at hand is whether Defendants' actual conduct – including conduct already documented in the FTC's filings with this Court – is conduct that Congress has prohibited by that statute because it causes or is likely to cause substantial injury.  Article III requires no more.[4]  In other words, Congress has protected, by statute, the public's right to be free of unfair and deceptive practices in commerce, and this Court may hear an action in which the FTC seeks to prevent the violation of that legally protected right.  *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980-81 (11th Cir. 2005) (legally protected interest for injury in fact prong of standing analysis must consist of obtaining compensation for, or preventing, the violation of a right protected by statute or otherwise).[5]

> **B.     Even If Applicable to the FTC's Actions to Enforce the FTC Act, Defendants' Standing Argument Fails As a Matter of Law**

As discussed above, Defendants' standing argument is inapplicable in this matter.

---

[4] *See also United States v. Mattson*, 600 F.2d 1295, 1297 (9th Cir. 1979) ("A fundamental judicial rule requires that a complainant establish standing before a suit can be properly heard.  Such a determination can be easily made with specific statutory authority.").

[5] In their Opposition to Plaintiff's Motion to Strike (Docket No. 44), at 5, Defendants assert that the FTC has shown merely that the FTC Act confers statutory standing, and that the FTC must demonstrate standing under Article III as well.  Although the distinction between statutory and Constitutional standing may be valid in other contexts, it is a false dichotomy as applied in this case.  The FTC Act not only authorizes the FTC to bring actions, it affirmatively defines the parameters of the "controversy" that this Court is to resolve.

However, even if it were applicable, the FTC has sufficiently shown the necessary elements of injury in fact, traceability, and redressability.  Alternatively, as discussed in Section III, *infra*, if Defendants' standing analysis is applicable, the FTC is entitled to discovery to demonstrate each element of the standing triad.

      **1.**   **There Is Sufficient "Injury in Fact"**

First, the injuries alleged in this case constitute "injury in fact" for Article III standing purposes.  "[T]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (internal quotation omitted). In enacting the FTC Act, Congress empowered the FTC to secure injunctive and other equitable relief against parties engaging in unfair and deceptive acts or practices in or affecting commerce, including actions that cause or are *likely to cause* substantial injury to consumers.  If a substantial injury under the FTC Act is likely, it constitutes a present, actual injury, as opposed to an abstract injury, and is sufficient to meet the "injury in fact" prong of the standing analysis articulated in the cases that Defendants have cited. *See Aero-Motive Co. v. U.S. Aeromotive, Inc.*, 922 F. Supp. 29, 35-36 (W.D. Mich. 1996) (plaintiff alleged that at present the public is likely to be confused as to the origin of services and products offered by litigants due to defendant's use of plaintiff's trademark; despite lack of evidence of actual confusion to date, plaintiff claims circumstances create present likelihood of confusion to satisfy Art. III "injury in fact" requirement).

In this case, the Court has already found that:

> The sale and operation of RemoteSpy is likely to cause substantial harm to consumers that cannot be reasonably avoided and is not outweighed by countervailing benefits to consumers or to competition. The likely harm includes financial harm (including identity theft) and endangering the health and safety of consumers. In limited circumstances, consumers include not only those who purchase products, but those whose privacy is unwittingly invaded by a product.

Order at ¶ 5. Defendants seem to pin their hopes on the myopic supposition that there are *no* consumer victims of RemoteSpy. The FTC is confident that discovery will provide evidence of harmful use of the software. *See* Section III, *infra* (discussing discovery). Indeed, even the filing of this action has prompted victims to voluntarily contact the FTC with information.

For example, as recounted in the declaration of Michael Dodd, dated December 31, 2008, submitted herewith ("Dodd Decl."), Mr. Dodd, his company Avionco Canada, Ltd., and his employees were recently victimized by RemoteSpy. Avionco is an aviation management and support group that provides services such as pilot training, certifications and placement, aircraft maintenance and audits, and web-based solutions for aircraft record management. Dodd Decl. at ¶¶ 2. As recounted by Mr. Dodd, one of Defendants' customers used RemoteSpy to retaliate against Avionco by stealing passwords, usurping proprietary business information, deleting an entire database of pilot information that was central to the business, and accessing financial accounts for personal gain – including the theft of approximately one million credit card reward points to make unauthorized purchases. *See id.* at ¶¶ 3-10.

Similarly to Defendants instructions, the RemoteSpy customer disguised the spy

module as an innocuous file and embedded the module in a Microsoft Word document that was sent by email using an assumed name. *See id.* at ¶ 12-16 and Attachment 1. Moreover, the infection of Avionco's computers occurred despite their use of two leading antivirus programs (Symantec Antivirus and F-PROT Antivirus). *See id.* at ¶ 17. Although Mr. Dodd cannot know the full extent of damage to Avionco or its employees because he does not know exactly what documents or information Defendants' customer already has in his possession or currently resides on Defendants' servers, Mr. Dodd estimates that his business has incurred in excess of $25,000 in costs related to the investigation, clean up, and lost time dealing with the situation. *See id.* at ¶¶ 20-21.

### 2. The Harm Is "Fairly Traceable" to Defendants

Second, the injury alleged in the FTC's Complaint are fairly traceable to Defendants' unlawful acts. The "fairly traceable" element does not require that the FTC show that Defendants' actions, and theirs alone, caused the alleged injuries. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996) (the fairly traceable element does not require that the plaintiffs show to a scientific certainty that the defendants' effluent, and the defendants' effluent alone, caused the precise harm suffered by the plaintiffs); *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990) (same; "plaintiff need not prove causation with absolute scientific rigor to defeat a motion for summary judgment"; "fairly traceable" requirement of *Valley Forge* test is "not equivalent to a requirement of tort causation").

In this case, the Court has already found that the sale and operation of RemoteSpy

is a likely cause of consumer injury.  Order at ¶ 5.  This Court has also found that:

> Defendants provide RemoteSpy customers with instructions for disguising the software as an innocuous file – complete with examples – in order to send the software to another computer and trick the owner or authorized user of the computer into installing the software.  Defendants also recommend the use of a stealth email service to send the software to the remote computer, which would prevent the recipient from determining the identity of the person attempting to install the keylogger on the recipient's computer.

*Id.* at ¶ 4.  Defendants also host the intercepted information and organize it for the their customers.  These actions contribute to the alleged injuries and are a sufficient causal link for the FTC to meet the "fairly traceable" element.  *See American Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 520 (4th Cir. 2003) (plaintiff must merely show that defendant discharges a pollutant that "causes or contributes" to the kinds of injuries alleged); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 2003 U.S. Dist. LEXIS 26779, * 33 (D.N.J. 2003) (plaintiffs need only show "that there is a substantial likelihood that there exists a causal link between their injuries and defendant's conduct").  Particularly in light of the Court's preliminary injunction order, which prohibits much of Defendants' participation and conduct in contributing to the harm through promotional and instructional materials (*see generally* Order at Sections I and II), it is mystifying that Defendants continue to argue that any injury to the public is not "fairly traceable" to their conduct.

        **3.**      **The Alleged Harm Will Be Redressed by a Favorable Decision**

Finally, the injuries alleged in the FTC's Complaint are likely to be redressed by a favorable decision granting the judicial relief the FTC seeks.  *Valley Forge*, 454 U.S. at

472; *Powell Duffreyn*, 913 F.2d at 73.  The FTC need neither allege nor demonstrate that an injunction against Defendants in this case – regardless of the size of their market share – will protect all consumers from all injury arising or likely to arise from similar dissemination of similar keylogger spyware.  All that the FTC needs to show for purposes of Article III standing is that the likely injury to identifiable consumer victims and the public at large arising from the alleged actions of these Defendants will, at least in part, be redressed by an injunction against these Defendants continuing to carry out those actions.  *See Powell Duffreyn*, 913 F.2d at 73 (the requested injunction will redress the alleged injury "at least in part").

It is self-evident that the requested injunctive relief will, if granted, put a halt to the spying on the consumer victims who currently have the keylogger software installed on their computes without their knowledge.  Moreover, the general public interest would also be served by the deterrent effect of the disgorgement and fencing-in relief the FTC seeks against these Defendants.  *See Powell Duffreyn*, 913 F.2d at 73 ("The general public interest in clean waterways will be served in this case by the deterrent effect of an award of civil penalties.  Penalties will deter both [the defendant] specifically and other NPDES permit holders generally.  Thus [plaintiff's] members' injuries may be redressed by a favorable decision in this case.").  The mere fact that there may be other similar products on the market – that may or may not be the subject of future law enforcement proceedings – is of no moment.

### III.    SUMMARY JUDGMENT WOULD BE PREMATURE BEFORE DISCOVERY HAS BEEN COMPLETED

"The burden is on the party seeking summary judgment to show that there is no genuine issue of material fact." *Alabama Farm Bureau Mut. Cas. Co. v. American Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) (internal citations and quotes omitted). "The party opposing the motion is to be given the benefit of all reasonable doubt in determining whether a genuine factual issue exists." *Id.* "In considering a summary judgment motion, the inferences most favorable to the party opposing the motion will be drawn. Such inferences may create disputes regarding basic facts or regarding facts to be inferred from such facts." *Id.* Only when the moving party's burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Colosimo v. City of Port Orange*, 2005 U.S. Dist. LEXIS 43857, at *7-9 (M.D. Fla. 2005) (describing standard applied to summary judgment motions).

Summary judgment "may only be decided upon an adequate record." *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988). It "should not . . . ordinarily be granted before discovery has been completed." *Alabama Farm Bureau Mut. Cas. Co. v. American Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979).[6] Where there has not yet been any discovery, let alone an "adequate opportunity for discovery," summary

---

[6] *Accord Jones v. City of Columbus*, 120 F.3d 248 (1997) (per curiam) (reversing grant of summary judgment entered before plaintiffs had opportunity to complete discovery).

judgment is simply not appropriate or warranted." *Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC*, 2008 U.S. Dist. LEXIS 87368, at *4-5 (S.D. Fla. 2008) (quoting *Snook*, 859 F.2d at 870).[7] This is especially true in cases in which the facts on which defendants rely in their summary judgment motion, or the proof supporting plaintiff's claims, is either likely in defendants' sole possession or largely within the control of the defendants. *See Cowan v. J.C. Penny, Inc.*, 790 F.2d 1529, 1532 (11th Cir. 1986) (per curiam) (defendant had exclusive possession of relevant facts); *Taylor v. Sanibel Dev., LLC*, 2007 U.S. Dist. LEXIS 33219, at *11 (S.D. Ala. 2007) (facts on which summary judgment motion based likely in defendant's sole possession); *see generally Alabama Farm Bureau*, 606 F.2d at 609 (factor of access to proof must be seriously considered in ruling on a defendant's motion for summary judgment, particularly in an action where plaintiff's proof must come mainly from sources largely within the control of the defendants and from the mouths of the alleged wrongdoers).

In this case, Defendants' Motion for Summary Judgment clearly has not set forth facts that meet its burden as to any, let alone all, counts in the FTC's Complaint, and the burden has not shifted to the FTC to demonstrate that there are material issues of fact that preclude summary judgment. Nevertheless, Defendants' legal arguments, if given credence, rest largely on factual assertions as to which discovery has only just begun and as to which there is certainly genuine dispute.

---

[7] *Accord Morrow v. Israel Aircraft Indus., Ltd.*, 2007 U.S. Dist. LEXIS 70807, at *10-19 (M.D. Fla. 2007) (summary judgment denied in cases in which no discovery had occurred and plaintiffs had little, if any, opportunity to engage in discovery prior to filing responses to summary judgment motions).

Discovery will enable the FTC to explore, challenge, and rebut the factual assertions upon which Defendant's Motion for Summary Judgment is based. With respect to Defendants' standing argument, for example, Defendants contend that the FTC cannot demonstrate any "injury in fact" because the harms alleged are "speculative and vague" and that the FTC has shown "no real injury suffered by any real person." SJM at 6. Should the FTC be required to "identify a single victim that was injured" (SJM at 6) by Defendants' spyware, it would need to have a full opportunity to review the intercepted data of consumer victims and to obtain third-party discovery from RemoteSpy customers. Defendant Spence purports to know of no incidents in which Defendants' spyware was used to commit identity theft or stalk victims of domestic abuse. SJM at 7. The FTC is entitled to explore his personal knowledge and to examine relevant documents in his, and his company's, possession, custody, or control. Mr. Laykin contends in his declaration that Defendants' spyware is not likely to be used to perpetrate identity theft. SJM at 7. The FTC is entitled to explore his knowledge and expertise that form the basis of these assertions.

Defendants claim that they "have not committed any of the acts constituting the Alleged Harm" and blame any alleged injury on the actions of third parties. SJM at 8. The FTC is entitled to discover the full nature of Defendants' interactions with RemoteSpy customers before the Court rules on Defendants' Summary Judgment motion based on this claim. Defendants likewise make numerous factual assertions about the availability of allegedly comparable remote keylogger products being advertised in a similar manner and that would "fill the void" should the FTC's requested injunction be

granted. SJM at 9. Should the Court believe that the availability of such products would make the injuries alleged by the FTC not redressable, the FTC would potentially need to take discovery to assess the comparability and availability of those products.

At the hearing on the preliminary injunction, the Court noted that the FTC has "no way to answer my question [regarding the uses of RemoteSpy] without discovery; and . . . until . . . we engage is some discovery, they're not going to have any ability to find that out." Preliminary Injunction Hearing Transcript (Docket No. 41) at 21 ll.9-12. Despite all of the arguments raised by Defendants (including those at issue on this motion), the Court has allowed the parties until April 20, 2009 to conduct discovery (Docket No. 37). Accordingly, summary judgment at this time is plainly premature and should be denied.

## IV. CONCLUSION

For the all foregoing reasons and those previously articulated, the FTC respectfully requests that Defendants' Motion for Summary Judgment be denied, and that the parties be permitted to proceed with discovery relevant to all of the claims and defenses at issue in this case.

Dated: December 31, 2008                    Respectfully submitted,
                                            WILLIAM BLUMENTHAL
                                            General Counsel

                                            s/David K. Koehler
                                            DAVID K. KOEHLER
                                            NY Bar. No. 2651404
                                            TRACY R. SHAPIRO
                                            CA Bar No. 220811
                                            FEDERAL TRADE COMMISSION
                                            600 Pennsylvania Avenue, N.W.
                                            Mail Drop  NJ-3212
                                            Washington, D.C.  20580
                                            TEL.: (202) 326-3627 (Koehler)
                                                    (202) 326-2343 (Shapiro)
                                            FAX: (202) 326-3259
                                            Email: dkoehler@ftc.gov
                                                    tshapiro@ftc.gov
                                            Attorneys for Plaintiff


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on **December 31, 2008**, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court by using the CM/ECF system, which would then send notice of the electronic filing to Dawn I. Giebler-Millner, Esq., gieblerd@gtlaw.com, Michele L. Johnson, Esq., johnsonm@gtlaw.com, and Mary Ellen Pullum, Esq., pullumm@gtlaw.com.


                                            s/David K. Koehler
                                            DAVID K. KOEHLER