**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

-vs-                                                      Case No. 6:08-cv-1872-Orl-31GJK

**CYBERSPY SOFTWARE, LLC, and
TRACER R. SPENCE,**

        **Defendants.**

## ORDER

This matter comes before the Court on the Motion for Sanctions and Contempt (Doc. 73) filed by the Defendants and the response (Doc. 80) filed by the Plaintiff.

**I.    Background**

Defendant Tracer Spence ("Spence") is the CEO of Defendant CyberSpy Software, LLC ("CyberSpy"), which sells a program called RemoteSpy. RemoteSpy is a type of software known as "spyware," which is used to secretly monitor the activity occurring on any computer on which it has been installed. The Federal Trade Commission ("FTC") contends that the Defendants' sale of RemoteSpy and related activities constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

The instant motion arises out of the Defendants' efforts to conduct a Rule 30(b)(6) deposition of the FTC. When presented with the notice of taking deposition, the FTC sought a protective order. (Doc. 53). As an investigative agency, the FTC argued, it had no independent knowledge of the facts underlying its case. The only facts it possessed were in the possession of

the attorneys who had gathered them in preparation for trial. As such, the Defendants' request for a Rule 30(b)(6) deposition, though not explicitly seeking to depose opposing counsel, was implicitly an effort to do just that.

On May 26, 2009, United States Magistrate Judge Gregory Kelly denied the motion for protective order. Disagreeing with the FTC's characterization of the dispute, Judge Kelly found that the issue was simply whether the Defendants were entitled to conduct a Rule 30(b)(6) deposition of a government agency, such as the FTC. (Doc. 67 at 3-4). Judge Kelly found that the Rule was applicable to the FTC, and the Defendants were entitled to a Rule 30(b)(6) deposition "regarding the facts supporting the agency's case." (Doc. 67 at 4).

On July 3, 2009, the FTC produced Richard Quaresima ("Quaresima"), the Assistant Director in the Division of Advertising Practices, as its corporate representative. During his deposition, Quaresima declined to answer a number of questions posed by the Defendants on the grounds of privilege or a lack of information. This motion followed.

**II.     Standards**

**A.     Rule 30(b)(6)**

Fed.R.Civ.P. 30(b)(6) provides that a party may, in a deposition notice, name as the deponent a governmental agency and must describe "with reasonable particularity" the matters for examination. The agency must then designate one or more persons to testify on its behalf about information known or reasonably available to it. Fed.R.Civ.P. 30(b)(6). The Rule 30(b)(6) deponent must make a "conscientious good-faith endeavor to designate the persons having knowledge of the matters sought" and to prepare those persons so they can "answer fully,

completely, unevasively, the questions posed . . . as to the relevant subject matters." *Securities and Exchange Commission v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (ellipses in original).

**B.  Work Product**

The attorney work-product privilege traces its roots to the recognition by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories is referred to as "opinion work product." *Cox v. Adminsistrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994). Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. *Id.* (citing *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)).

The work product privilege is codified in Fed.R.Civ.P. 26(b)(3), which provides that documents and tangible things prepared in anticipation of litigation are not discoverable unless the party seeking disclosure demonstrates "substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Even when ordering discovery of attorney work product, the court must "protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation." *Id*. It is a necessary corollary to this rule that protected work product contained in documents and tangible things cannot be obtained through less tangible methods such as the deposition questioning of persons with knowledge of the protected information. *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 586 (N.D.N.Y. 1989) (citing *Hickman*, 329 U.S. at 510-11).

**III.     Application**

The Defendants' deposition notice set forth nine areas of inquiry.  The Defendants acknowledged that Quaresima's testimony was adequate as to the second and third.  The remaining areas are addressed below.

**A.     Website Marketing and Advertising**

Item 1 of the notice required the corporate representative to provide testimony as to the "transactions, occurrences, events, claims or complaints giving rise to this action."  (Doc. 73-5 at 4).  Early on in this litigation, the Court entered an injunction, requiring (among other things) the removal of some of the advertising on CyberSpy's website.  The Defendants asked Quaresima whether the changes to the website "satisfie[d] the FTC" with regard to the Defendants' marketing practices and, if not, what additional changes the FTC would seek.  (Doc. 73 at 10).  Quaresima refused on the grounds of work product privilege.

It is doubtful that the changes made to CyberSpy's website – which obviously occurred *after* the initiation of this suit – fall within the category of "transactions, occurrences, events, claims or complaints *giving rise* to this action."  Even if they did, however, the Defendants' queries to Quaresima on this issue clearly sought opinion work product – mental impressions as to the changes made to the CyberSpy website and opinions as to the legal effect of those changes.[1]  The FTC's refusal to answer these questions was therefore proper.

---

[1] Certainly, the Defendants are at least as knowledgeable as the FTC as to the facts relevant to this issue, such as what their website used to say, and what it says now.

**B.     The Claims against the Defendants**

To establish that an act or practice is unfair under Section 5 of the FTC Act, the FTC may introduce evidence of a party's violations of other statutes, including statutes that the FTC lacks the authority to administer. *See*, *e.g.*, *F.T.C. v. Accusearch, Inc.*, 570 F.3d 1187, 1195-96 (10th Cir. 2009) (holding same and stating that "condemnation of a practice in criminal or civil statutes may well mark that practice as 'unfair'"). The Defendants sought information from Quaresima regarding the other statutes, besides the FTC Act, that the FTC intends to argue were violated by the Defendants.[2]

According to the Defendants, the FTC "refused to even identify the federal or state statutes under which they plan to proceed and the factual basis justifying same." (Doc. 73 at 12). Not so. As set forth in the complaint (Doc. 1), the FTC is proceeding under the FTC Act. In addition, Quaresima listed two other statutes as being relevant to the issue of unfairness in this case: the Wiretap Act and the Historic Communications Act. (Doc. 73 at 11). As for the "factual basis justifying same," a request for such justification is explicitly a request for the "mental impressions, conclusions, opinions or legal theories of a party's attorney" and was properly objected to. *See, e.g.*, *S.E.C. v. Buntrock*, 217 F.R.D. 441, 446 (N.D.Ill. 2003) (request for 30(b)(6) deposition regarding facts supporting agency's allegations was improper effort to discover opposing counsel's legal theories and explanations of those theories; protective order granted).

---

[2] The Defendants contend that these questions sought information regarding the "claims . . . giving rise to this action." (Doc. 73 at 11).

### C. Unfair and Deceptive Acts

Items 4, 5, and 6 of the deposition notice sought information regarding any deceptive or unfair practices or acts allegedly committed by CyberSpy, Spence, or third parties. (Doc. 73-5 at 4-5). Item 9 sought information as to "all facts showing that CyberSpy and/or Spence intended to commit any deceptive or unfair practices or acts" in violation of the FTC Act. (Doc. 73-4 at 5).

In the Complaint, the FTC contended that the Defendants provided third parties with the means and instrumentalities to commit unfair and deceptive acts. (Doc. 1 at 10-12). The Defendants complain that Quaresima refused to identify any such third parties other than as "purchasers" of RemoteSpy. (Doc. 73 at 12). Similarly, the FTC contends that certain third parties improperly installed RemoteSpy on other peoples' computers, and the agency named some of these third parties in response to interrogatories from the Defendants. (Doc. 73 at 12-13). But when quizzed about those named individuals, Quaresima was unable to provide any additional information about them. Instead, he referred the Defendants to other discovery material. (Doc. 73 at 12-13). The Defendants contend that, as a result, they "remain completely in the dark about the facts underlying the allegations made against them by the FTC." (Doc. 73 at 13). Aside from this statement, the Defendants offer no analysis as to why Quaresima's reponses here were improper, or what information they should have been able to obtain. The Court sees no discovery violation here. If, as the FTC argues, all purchasers of RemoteSpy were provided with the means and instrumentalities to commit unfair and deceptive acts, then the purchasers' identities are not relevant to the claim against these parties. In addition, the Defendants are almost certainly in possession of the identities they sought to discover from Quaresima. Their assertion that

Quaresima's failure to repeat this information back to them leaves them "completely in the dark" is ludicrous.

**D. Alleged Victims**

Item 7 sought information as to any instances in which any person suffered any type of harm due to the activities of the Defendants or the use of RemoteSpy. (Doc. 73-5 at 4). In response to questioning, Quaresima stated that any individual who had RemoteSpy installed on their computer without notice or authorization had been harmed. When asked about certain individuals named in interrogatory responses as having suffered this harm, Quaresima was unable to provide any additional information. Quaresima discussed, in general terms, several instances when such improper installation occurred. When pressed about a company – Avionco – whose president submitted an affidavit describing such an incident, Quaresima said he was unable to provide any information beyond that contained in the affidavit. (Doc. 73 at 14).

As the FTC points out, it has informed the Defendants of its basic contentions – for example, that all consumers who have RemoteSpy improperly installed on their computers have suffered harm, and that the act of disguising RemoteSpy as an innocuous document to facilitate surreptitious installation is deceptive. (Doc. 80 at 11-12). According to the FTC, the Defendants are in possession of all the discoverable material – such as interrogatory responses, affidavits, and deposition transcripts – containing the facts supporting these contentions. (Doc. 80 at 11-12).

Assuming this to be true, the Defendants have received all of the facts they are entitled to discover. The Defendants are not entitled to explore opposing counsel's thought processes as to *which* facts support these contentions (and which do not), or what inferences can be drawn from

the evidence that has been assembled so far.³ And the agency is not required to produce a witness who has memorized all of the facts that have been uncovered to date. *See*, *e.g.*, *S.E.C. v. Nacchio*, 614 F.Supp.2d 1164, 1177 (D.Colo. 2009) (noting that requiring agency rep to spend weeks if not months learning the case would "inefficient in the extreme" and that even agency counsel might not have all the facts "immediately at her fingertips").

### E. Identity Theft and Stalking

Item 8 of the deposition notice required the FTC representative to testify about alleged instances where RemoteSpy had been used "to commit identity theft, to stalk victims of domestic violence, and/or . . . any other deceptive act or practice." (Doc. 73-5 at 5). After testifying that names of some individuals who had been the subject of such acts had been produced, Quaresima could not name any such individual or describe the circumstances of any such incident. (Doc. 73 at 16). As detailed in Section D, assuming that the FTC has produced the pertinent information

---

³And if the Defendants have not been given all of the facts to which they are entitled, they may pursue other remedies at trial, such as motions in limine.

via interrogatory responses, depositions, and the like, the Defendants have received all the facts to which they are entitled.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Sanctions and Contempt (Doc. 73) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 31, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party